1

2

3

4

5

6

7

8                        IN THE UNITED STATES DISTRICT COURT

9                       FOR THE EASTERN DISTRICT OF CALIFORNIA

10   JACK HART,

11              Plaintiff,                         No. 2:11-cv-2651 CKD

12         vs.

13   MICHAEL J. ASTRUE,                            ORDER
     Commissioner of Social Security,

14
                Defendant.
15   _____/

16              Plaintiff seeks judicial review of a final decision of the Commissioner of Social

17   Security ("Commissioner") denying his application for Disability Income Benefits ("DIB") under

18   Title II of the Social Security Act ("Act").  For the reasons discussed below, the court will deny

19   plaintiff's motion for summary judgment and grant Commissioner's cross-motion for summary

20   judgment.

21   BACKGROUND

22              Plaintiff, born February 4, 1951, applied on May 12, 2008 for DIB, alleging

23   disability beginning September 20, 2007.  Administrative Transcript ("AT") 120.  Plaintiff

24   alleged he was unable to work due to a lower back injury.  AT 130.  In a decision dated February

25   \\\\\

26   \\\\\

1

1  23, 2010, ALJ L.Kalei Fong determined that plaintiff was not disabled.[1]  AT 13-18.  The ALJ

2  made the following findings (citations to 20 C.F.R. omitted):

3      1.    The claimant meets the insured status requirements of the
           Social Security Act through December 31, 2012.

4

5      2.    The claimant has not engaged in substantial gainful activity
           since September 20, 2007, his alleged onset date.

6      3.    The claimant has had the following severe impairments:
           coronary artery disease; obesity, Hepatitis C; and
7          degenerative disc disease of the lumbar spine.

8      4.    The claimant has not had an impairment or combination of
           impairments that meets or medically equals one of the
9          listed impairments in 20 CFR Part 404, Subpart P,
           Appendix 1.

10

11     5.    After careful consideration of the entire record, the
           undersigned finds that the claimant has had the residual

12

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.  Supplemental Security Income is paid to disabled persons with low income.  42 U.S.C. § 1382 et seq.  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987).  The following summarizes the sequential evaluation:
    Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
    Step two:  Does the claimant have a "severe" impairment? If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
    Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
    Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
    Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.
Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).
    The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

2

1   functional capacity as follows:  able to lift 30 pounds
    occasionally and 20 pounds frequently; able to stand no
2   more than four hours in an eight-hour workday, for no more
    than an hour and a half at a time; able to walk four hours in
3   an eight-hour workday, for no more than two hours at a
    time; able to sit six hours in an eight-hour workday, for no
4   more than an hour and a half at a time; unable to climb
    ladders, ropes, and scaffolds; otherwise, able to perform
5   occasional climbing, balancing, stooping, kneeling,
    crouching, and crawling; requiring the option to alternate
6   sitting and standing at will; and unable to work in
    especially hazardous settings, such as work at unprotected
7   heights or near dangerous, moving machinery.

8       6.   The claimant has been capable of performing his past
             relevant work.  This work does not require the performance
9            of work related activities precluded by the claimant's
             residual functional capacity.

10

11      7.   The claimant has not been under a disability, as defined in
             the Social Security Act, from September 20, 2007 through
             the date of this decision.

12

13  AT 15-18.

14  ISSUES PRESENTED

15          Plaintiff argues that the ALJ committed the following errors in finding plaintiff

16  not disabled:  (1)  The ALJ improperly rejected the opinion of a treating physician; and (2) the

17  testimony of the vocational expert cannot support the ALJ's determination that plaintiff could

18  perform his past relevant work.

19  LEGAL STANDARDS

20          The court reviews the Commissioner's decision to determine whether (1) it is

21  based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in

22  the record as a whole supports it.  Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir.1999).

23  Substantial evidence is more than a mere scintilla, but less than a preponderance.  Connett v.

24  Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted).  It means "such relevant evidence

25  as a reasonable mind might accept as adequate to support a conclusion."  Orn v. Astrue, 495 F.3d

26  625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).  "The

1   ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and

2   resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations

3   omitted).  "The court will uphold the ALJ's conclusion when the evidence is susceptible to more

4   than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

5   The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir.

6   1986), and both the evidence that supports and the evidence that detracts from the ALJ's

7   conclusion weighed.  See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may

8   not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence.  Id.;

9   see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports

10  the administrative findings, or if there is conflicting evidence supporting a finding of either

11  disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d

12  1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was

13  applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

14  ANALYSIS

15          A.  Treating Physician's Opinion

16          Plaintiff contends the ALJ improperly rejected the opinion of plaintiff's treating

17  physician, Dr. Sewell, dated August 5, 2009.  The weight given to medical opinions depends in

18  part on whether they are proffered by treating, examining, or non-examining professionals.

19  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  Ordinarily, more weight is given to the

20  opinion of a treating professional, who has a greater opportunity to know and observe the patient

21  as an individual.  Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

22          To evaluate whether an ALJ properly rejected a medical opinion, in addition to

23  considering its source, the court considers whether (1) contradictory opinions are in the record,

24  and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted opinion of a

25  treating or examining medical professional only for "clear and convincing" reasons.  Lester, 81

26  F.3d at 831.  In contrast, a contradicted opinion of a treating or examining professional may be

4

1  rejected for "specific and legitimate" reasons, that are supported by substantial evidence. Id. at

2  830.  While a treating professional's opinion generally is accorded superior weight, if it is

3  contradicted by a supported examining professional's opinion (e.g., supported by different

4  independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d

5  1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).  In

6  any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical

7  findings.  Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir.1999) (treating physician's conclusory,

8  minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751.  The opinion of a

9  non-examining professional, without other evidence, is insufficient to reject the opinion of a

10  treating or examining professional.  Lester, 81 F.3d at 831.

11          In a multiple impairment questionnaire dated August 5, 2009, plaintiff's treating

12  physician, Dr. Sewell, opined that plaintiff could sit for two hours total, stand and/or walk for

13  four hours total in an eight-hour workday, had moderate limitations in reaching, and would miss

14  more than three days of work per month.  AT 860, 862, 864.  As noted by the ALJ, Dr. Sewell's

15  2009 assessment would limit plaintiff to less than a full range of sedentary work.  Plaintiff

16  contends the ALJ did not give sufficient reasons for rejecting Dr. Sewell's opinion.

17          In assessing plaintiff's residual functional capacity, the ALJ rejected Dr. Sewell's

18  2009 restrictive assessment and instead relied on plaintiff's own testimony regarding his

19  limitations.  AT 17.  At a hearing held on November 17, 2009, plaintiff testified that he could

20  perform a job where he had the opportunity to sit or stand at his discretion.  AT 30.  Plaintiff

21  further testified he was capable of sitting for an hour and a half, that he could walk for two hours

22  at least, and that with a sit/stand option, he was capable of working consistently for a 40 hour

23  workweek.  AT 31, 39.  With respect to lifting capacity, plaintiff testified he could lift 40 pounds

24  and that he could split and move logs weighing 20 to 30 pounds for an hour and a half before he

25  would have to stop due to pain.  AT 32.  Plaintiff also testified that he had some limitations in

26  bending and crouching, but was capable of crawling, and had no limitations with respect to his

1   upper extremities.  AT 33-34.  Plaintiff's pain was rated as occasional with plaintiff testifying

2   that he took pain pills "maybe a week out of a month" and that he was able to sleep about eight

3   hours, feeling refreshed upon awakening.  AT 38-39.

4            The ALJ properly rejected Dr. Sewell's opinion in light of the inconsistencies

5   between plaintiff's testimony and Dr. Sewell's 2009 assessment.  Plaintiff's testimony, given in

6   November 2009, was the most recent evidence of plaintiff's condition; Dr. Sewell's opinion was

7   rendered four months earlier.  The ALJ was entitled to accord more probative value to plaintiff's

8   own assessment of his functional capabilities.  Crediting plaintiff's own testimony is a specific

9   and legitimate reason for according little weight to the opinion of a treating physician.

10  Moreover, as noted by the ALJ, plaintiff's testimony is supported by the functional assessment of

11  the state agency physician, who opined, based on the benign findings in the medical record, that

12  plaintiff was capable of performing full time work.  AT 16, 284-291.  In addition, Dr. Sewell's

13  prior assessment, rendered in December 2007 for the purpose of a workers' compensation

14  permanent and stationary report, opined that plaintiff could lift a maximum of 40 pounds,

15  frequently lift 20 pounds, stand and walk less than four hours a day, and sit for a total of less than

16  eight hours a day, with no upper extremity limitations.  AT  233-235.  The medical records

17  between December 2007 and August 2009 do not reveal any deterioration in plaintiff's condition

18  which would justify the increased limitations assessed by Dr. Sewell in his later report.  Dr.

19  Sewell's 2007 assessment is generally consistent with plaintiff's testimony and the residual

20  functional capacity assessed by the ALJ.[2]  AT 17, 233-234.  There is no error in the ALJ's

21  rejection of Dr. Sewell's 2009 opinion, which is unsupported by the record and inconsistent with

22  plaintiff's testimony.

23  /////

24

25  _____
        [2]  The major difference between Dr. Sewell's 2007 assessment and the ALJ's assessed
    residual functional capacity is the ALJ's finding that plaintiff could stand or walk for a combined
    eight hours.  However, the residual functional capacity incorporated plaintiff's testimony as to
26  how long, without a break, plaintiff could perform either standing or walking.  AT 17, 31.

                                            6

1          B.  Vocational Expert Testimony

2                Plaintiff contends the ALJ committed reversible error by not inquiring of the

3    vocational expert whether his testimony was consistent with the DOT.[3]  Plaintiff is correct that

4    Social Security Ruling[4] ("SSR") 00-4p imposes an affirmative duty on the ALJ to inquire

5    whether the vocational expert's testimony conflicts with the DOT.  Here, however, plaintiff fails

6    to identify any conflict between the expert's testimony and the DOT.[5]  The vocational expert

7    testified that plaintiff's past relevant work as a cashier, as actually performed by plaintiff,

8    required a heavy exertional capacity.  AT 41-42.  The expert further testified, however, that

9    plaintiff could perform his past relevant work as described in the DOT because that position

10   required only a light capacity.  AT 42-43.  Upon further questioning by plaintiff's attorney, the

11   vocational expert clarified that although there were some sedentary and heavy cashiering jobs,

12   most cashiering jobs fell within the light range of work.  AT 45.  The vocational expert also

13   explained that the DOT does not specifically address sit/stand options but that based on his

14   expertise, his opinion was that plaintiff's functional limitation with respect to sitting and standing

15   could be accommodated within the cashiering classification.  AT 47-48.

16

17        [3]  The United States Dept. of Labor, Employment & Training Admin., Dictionary of
     Occupational Titles (4th ed. 1991), ("DOT") is routinely relied on by the SSA "in determining
18   the skill level of a claimant's past work, and in evaluating whether the claimant is able to
     perform other work in the national economy."  Terry v. Sullivan, 903 F.2d 1273, 1276 (9th Cir.
19   1990).  The DOT classifies jobs by their exertional and skill requirements.   The DOT is a
     primary source of reliable job information for the Commissioner.  20 C.F.R. § 404.1566(d)(1).
20
          [4]  Social Security Rulings "represent precedent final opinions and orders and statements
21   of policy and interpretations that we have adopted."  20 C.F.R. § 402.35(b)(1).  Social Security
     Rulings are "binding on all components of the Social Security Administration."  Heckler v.
22   Edwards, 465 U.S. 870, 873 n.3 (1984); cf.  Silveira v. Apfel, 204 F.3d 1257, 1260 (9th
     Cir.2000) ("This court defer[s] to Social Security Rulings ... unless they are plainly erroneous or
23   inconsistent with the Act or regulations").

24        [5]  The ALJ's assessed residual functional capacity is consistent with light work.  The ALJ
     found plaintiff could stand four hours and walk four hours, for a total of 8 hours of standing or
25   walking.  AT 17.  The full range of light work requires standing or walking, off and on, for a total
     of approximately 6 hours of an 8-hour workday.  SSR 83-10.  The DOT job classification
26   identified by the ALJ required a light exertional level.

7

1          The testimony elicited from the vocational expert establishes that the expert relied

2    on the DOT, and where the DOT did not address certain aspects of a job, the vocational expert

3    properly relied on his own expertise in determining whether plaintiff could perform the identified

4    job with the residual functional capacity posited by the ALJ in the hypothetical.  The job

5    identified by the vocational expert was plaintiff's past relevant work as generally performed.  See

6    Pinto v. Massanari, 249 F.3d 840, 845 (9th Cir. 2001) (plaintiff must be able to perform the

7    functional demands and job duties of the occupation as generally required by employers

8    throughout the national economy; Sanchez v. Secretary of HHS, 812 F.2d 509, 511 (9th Cir.

9    1987) (plaintiff not disabled if he or she can perform past work as performed in national

10   economy); see also SSR 82-61 (past relevant work determined by particular past job or the

11   occupation as generally performed).  Because the vocational expert identified 6,425 jobs in the

12   Sacramento area, 114,879 jobs statewide, and 1,024,758 jobs nationwide available to plaintiff,

13   substantial evidence supports the ALJ's finding that plaintiff is not disabled.  AT 43 (vocational

14   expert identified DOT 211.462-010[6] as cashier job within plaintiff's residual functional

15

16          [6]  The DOT provides in relevant part:
           211.462-010 CASHIER II (clerical) alternate titles: cash clerk; cashier, general;
17   cashier, office; ticket clerk
           Receives cash from customers or employees in payment for goods or services and
18   records amounts received: Recomputes or computes bill, itemized lists, and tickets showing
     amount due, using adding machine or cash register. Makes change, cashes checks, and issues
19   receipts or tickets to customers. Records amounts received and prepares reports of transactions.
     Reads and records totals shown on cash register tape and verifies against cash on hand. May be
20   required to know value and features of items for which money is received. May give cash refunds
     or issue credit memorandums to customers for returned merchandise. May operate
21   ticket-dispensing machine. May operate cash register with peripheral electronic data processing
     equipment by passing individual price coded items across electronic scanner to record price,
22   compile printed list, and display cost of customer purchase, tax, and rebates on monitor screen.
     May sell candy, cigarettes, gum, and gift certificates, and issue trading stamps. May be
23   designated according to nature of establishment as Cafeteria Cashier (hotel & rest.); Cashier,
     Parking Lot (automotive ser.); Dining-Room Cashier (hotel & rest.); Service-Bar Cashier (hotel
24   & rest.); Store Cashier (clerical); or according to type of account as Cashier, Credit (clerical);
     Cashier, Payments Received (clerical). May press numeric keys of computer corresponding to
25   gasoline pump to reset meter on pump and to record amount of sale and be designated Cashier,
     Self-Service Gasoline (automotive ser.). May receive money, make change, and cash checks for
26   sales personnel on same floor and be designated Floor Cashier (clerical). May make change for

1   capacity); see Moncada v. Chater, 60 F.3d 521, 524 (9th Cir. 1995) (2,300 jobs in the county and

2   64,000 nationwide are sufficient); Barker v. Secretary HHS, 882 F.2d 1474, 1478-79 (9th Cir.

3   1989) (1,200 jobs in Southern California are sufficient).  As such, any failure of the ALJ to

4   specifically inquire of the vocational expert whether there was conflict between his testimony

5   and that of the DOT is harmless.  See Curry v. Sullivan, 925 F.2d 1127, 1129 (9th Cir.1990)

6   (harmless error analysis applicable in judicial review of social security cases), see also Massachi

7   v. Astrue, 486 F.3d 1149, 1154 n. 19 (9th Cir. 2007) (procedural error harmless where no

8   conflict).  On this record, the reliance by the ALJ on the vocational expert's testimony was

9   proper and the failure to inquire of the vocational expert regarding consistency with the DOT

10  does not constitute reversible error.

11  CONCLUSION

12          For the reasons stated herein, IT IS HEREBY ORDERED that:

13          1.  Plaintiff's motion for summary judgment (dkt. no. 11) is denied;

14          2.  The Commissioner's cross-motion for summary judgment (dkt. no. 15) is

15  granted; and

16          3.  Judgment is entered for the Commissioner.

17   Dated: November 5, 2012

18                                                    _____
19                                                    CAROLYN K. DELANEY
                                                      UNITED STATES MAGISTRATE JUDGE

20

21

22  4
    hart2651.ss

23

24

25  _____

26  patrons at places of amusement other than gambling establishments and be designated
    Change-Booth Cashier (amuse. & rec.) . . . STRENGTH: Light.

9